UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

                         :

JUDITH NEUMAN,                :

                         :      CASE NO. 1:14-CV-01615

        Plaintiff,         :

                         :

v.                        :      OPINION & ORDER

                         :      [Resolving Doc. 1]

L'ORÉAL USA S/D, INC.,       :

                         :

        Defendant.       :

                         :

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case, Plaintiff Judith Neuman seeks an injunction on behalf of a putative class against allegedly deceptive advertising of liquid foundation makeup by Defendant L'Oréal USA S/D, Inc. (L'Oréal).[1] She filed her complaint in the Court of Common Pleas of Cuyahoga County, and L'Oréal removed it to this Court on the basis of diversity jurisdiction.[2]

Neuman has filed a "Suggestion the Court Lacks Subject Matter Jurisdiction." With that filing, she suggests she lacks Article III standing to ask a federal court for an injunction because she has no intention to purchase the product in question again.[3] For the following reasons, the Court agrees with Neuman's suggestion and therefore **REMANDS** the case to the Court of Common Pleas of Cuyahoga County.

## I. Background

In her complaint, Neuman alleges generally that L'Oréal deceptively markets its Lancôme

---

[1] Doc. 1-2.
[2] Doc. 1.
[3] Doc. 8.

Case No. 1:14-CV-01615
Gwin, J.

brand Teint Idole Ultra 24H Liquid foundation makeup.[4]  She claims that the advertising is

deceptive in two ways.  First, she says that L'Oréal's advertising campaign falsely conveys the

message that the product will last for twenty-four hours, which she refers to as the "twenty-four hour

claim."  Second, she says that the advertising campaign deceptively conveys that a high level of

scientific research supports the twenty-four hour claim.[5]

Plaintiff Neuman says that she saw L'Oréal's advertisements in magazines and that she relied

on their representations when she purchased the product.[6]  But when she used the product, she says,

it failed to work as advertised.[7]  After L'Oréal denied her request for a refund, Neuman "abandoned

any interest in a refund and is now concentrated solely on obtaining an injunction to protect Ohio

citizens from Defendant's deceptive practices at suit."[8]  To achieve this goal, she seeks an injunction

under the Ohio Consumer Sales Practices Act.[9]

Neuman's complaint does not expressly represent either that she intends to purchase the

product in question again or that she does not intend to do so.  The statement that comes closest to

answering that question is that after using the product, Neuman "was highly disappointed and she

did not use the makeup again."[10]

On June 17, 2014, Plaintiff Neuman filed her complaint in the Cuyahoga County Court of

Common Pleas, and on July 22, 2014, Defendant L'Oréal removed the case to this Court.[11]

---

[4] Doc. 1-2.
[5] *Id.*
[6] *Id.* at 8-9.
[7] *Id.* at 9.
[8] *Id.* at 10.
[9] *See* Ohio Rev. Code § 1345.01 et seq.
[10] Doc. 1-2 at 9.
[11] Doc. 1.

Case No. 1:14-CV-01615
Gwin, J.

On July 25, 2014, Neuman filed a "Suggestion the Court Lacks Subject Matter Jurisdiction" because she lacks Article III standing.[12/]  Although neither party has formally moved for a remand in this or any other filing, both parties have addressed the issue multiple times.[13/]  L'Oréal's "preliminary response," which it suggests it would supplement in case of a formal motion to remand, focuses on two arguments: first, that plaintiffs have standing to seek injunctions under state consumer protection laws even when they do not intend to purchase the product in question again; and second, that even if such plaintiffs generally lack standing, Neuman has not effectively disclaimed any intent to purchase the product again.[14/]

## II. Legal Standard

"The district courts of the United States . . . are 'courts of limited jurisdiction.  They possess only that power authorized by Constitution and by statute.'"[15/]  A defendant may remove a civil action filed in a state court to a United States district court having original jurisdiction over the action.[16/]  But for a district court to have original jurisdiction, the strictures of Article III, including standing, must be satisfied.  "Removal statutes are strictly construed with all doubts resolved against removal."[17/]  This remains true even when the plaintiff has not formally moved to remand the case.[18/]

A federal court has "an independent obligation to investigate and police the boundaries of

---

[12/]Doc. 8.

[13/]*See* Docs. 8, 12 (Neuman); Docs. 9 at 13-15, 13 (L'Oréal).

[14/]Doc. 13.

[15/] *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[16/] 28 U.S.C. § 1441(a).

[17/]*Sollitt v. KeyCorp*, 463 F. App'x 471, 473 (6th Cir. 2012) (citing *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)).

[18/]*See Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 606 F. Supp. 2d 698, 703 (N.D. Ohio 2009), *vacated on other grounds*, 621 F.3d 554 (6th Cir. 2010).

Case No. 1:14-CV-01615
Gwin, J.

[its] own jurisdiction."[19]  This is the case even where the parties have ignored the issue completely

or attempted to consent to the lack of jurisdiction because "subject-matter jurisdiction . . . can never

be forfeited or waived."[20]  The Court finds the standing issue is properly considered despite the

absence of a formal motion to remand.

Article III standing requires (1) an injury in fact (2) caused by the defendant that (3) can be

redressed by a favorable resolution of the suit.[21]  Plaintiffs seeking injunctions must show that they

are "likely to suffer future injury" in order to establish standing.[22]  The mere fact of a past injury

does not necessarily establish the required likelihood of future harm.[23]  In the context of a putative

class action, at least one named plaintiff must have standing.[24]

### III. Analysis

There is a split of authority on whether, under these general principles, a plaintiff has

standing to seek an injunction against allegedly deceptive advertising even though she does not plan

to purchase the product in question again.[25]  Some courts have held that where the plaintiff has no

plans to purchase the product again, he or she lacks standing to seek an injunction.  For example,

in confronting such a situation arising under California consumer protection law, the Southern

---

[19]*Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010) (internal quotation marks and citation omitted).

[20]*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

[21]*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[22]*City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

[23]*Id.*

[24]*Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

[25]*See generally* Meaghan Millan, Note, *The Justiciability of State Consumer Protection Claims in Federal Courts: A Study of Named Plaintiffs Who Cease Using the Disputed Product*, 81 Fordham. L. Rev. 3565 (2013).

Case No. 1:14-CV-01615
Gwin, J.

District of Ohio held that such plaintiffs had standing to seek damages, but not an injunction.[26/]

Other courts have similarly concluded that such plaintiffs lack standing to seek injunctions.[27/]

On the other hand, some courts–especially but not exclusively district courts in
California–have concluded that consumers who purchase a product in reliance on false advertising
have standing to seek to enjoin the false advertising even if they do not plan to purchase the product
again.  These courts generally reason that if such plaintiffs lacked standing, then state consumer
protection law could frequently not be enforced with injunctions in federal court.  Defendant L'Oréal
cites many of these cases in its briefing.[28/]

The Court finds the former set of arguments more persuasive.  The result that a plaintiff who
suffers no risk of future injury cannot obtain an injunction furthers the purpose of the Article III
standing inquiry–to ensure that there is a live case or controversy between the parties.  It is not an
unintended consequence.  It is also worth noting that this conclusion does not foreclose all relief,
or indeed, any relief at all.  Although none have been asserted in this case, claims for damages could
be viable in federal court if sufficient amounts were in controversy.  And because state courts are
not bound by Article III's strictures, the injunctions themselves can still be pursued in state court
after remand.

Defendant L'Oréal also argues that Plaintiff Neuman's complaint did not say that she would

---

[26/]*Rikos v. Proctor & Gamble Co.*, 782 F. Supp. 2d 522, 530-32 (S.D. Ohio 2011).

[27/]*See, e.g., McNair v. Synapse Grp., Inc.*, 672 F.3d 213 (3d Cir. 2012) (considering claims brought under New
York, New Jersey, and D.C. law).

[28/]*See, e.g., Henderson v. Gruma Corp.*, 10-cv-4173, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) ("If
the Court were to construe Article III standing for [California consumer protection law] claims as narrowly as the
Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer
protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury
thereafter ('once bitten, twice shy') and would never have Article III standing."); *Ackerman v. Coca-Cola Co.*,
09-cv-395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y July 18, 2013) (citing *Henderson* and several other cases).

Case No. 1:14-CV-01615
Gwin, J.

not purchase the product again.  Although that is true as a technical matter, the Court concludes that

the language used comes close enough to have the same functional import.  Neuman's statement that

she "was highly disappointed and she did not use the makeup again"[29] very strongly implies that she

has decided not to purchase the product in the future.  And while Neuman does allege that members

of her putative class would likely continue to purchase the product, a named plaintiff's standing to

seek an injunction cannot rest on the likelihood of future harm to unnamed class members.[30]

### IV. Conclusion

For the reasons set forth above, the Court  **REMANDS** this case to the Court of Common

Pleas of Cuyahoga County.

IT IS SO ORDERED.


Dated: October 14, 2014                                  s/          *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE

---

[29] Doc. 1-2 at 9.

[30] *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

-6-